# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

|  |  |
|---|---|
| J. MICHAEL FITZGERALD MORRIS, IV, | |
| Plaintiff, | No. C14-4068-LTS |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

_____

Plaintiff J. Michael Fitzgerald Morris, IV, seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Morris contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I.    *BACKGROUND*

Morris was born in 1976, has a high school education and has past relevant work as a phlebotomist, telephone solicitor, sales attendant and sales representative – financial services. AR 22, 74-75, 390. He filed an application for DIB on September 6, 2011, and an application for SSI on September 20, 2011. AR 237-43, 244-50. He originally alleged a disability onset date of June 20, 2007, but later amended that date to June 12, 2008. AR 12, 34-35, 237, 244.

Morris' claims were denied initially and on reconsideration. AR 102-12, 169-79. He then requested a hearing before an administrative law judge (ALJ). On March 4, 2013, ALJ Jan E. Dutton conducted a hearing at which Morris and a vocational expert (VE) testified. On April 5, 2013, the ALJ issued a decision finding that Morris was not disabled within the meaning of the Act. AR 12-24. The Appeals Council denied Morris' request for review of the ALJ's decision on May 22, 2014. AR 1-6. The ALJ's decision thus stands as the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

Morris filed a complaint (Doc. No. 1) in this Court on July 28, 2014, seeking review of the Commissioner's decision. This case was originally assigned to Senior United States District Judge Donald E. O'Brien. Judge O'Brien heard oral argument by telephone on January 29, 2015. Doc. No. 15. Unfortunately, Judge O'Brien passed away before he was able to issue a ruling. This case was reassigned to me on February 17, 2016. The parties have briefed the issues and the matter is fully submitted.

## II.   *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of

opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also

that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)     The claimant has not engaged in substantial gainful activity since June 12, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

(3)     The claimant has the following severe impairments: congenital heart disorder; atrial fibrillation; hemophilia A; history of ablation and supraventricular tachycardia; post-traumatic stress disorder; obsessive compulsive disorder; and depression (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: The claimant can occasionally lift or carry 20 pounds; and frequently lift

or carry 10 pounds. He has no restriction in his ability to stand, sit, or walk. The claimant can occasionally perform all postural activities such as climb, balance, stoop, kneel, crouch, and crawl. He should not work on ladders. The claimant needs to avoid concentrated exposure to cold, heat, humidity, and hazards.

Mentally, the claimant is limited to performing unskilled work (SVP 1 or 2). He needs to avoid work that requires extended concentration or attention. Socially, the claimant should avoid large groups of people or intense interaction. His social interactions can be brief, superficial, and occasional but avoid large crowds or groups.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on October 27, 1976 and was 31 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from June 12, 2008, through

the date of this decision (20 CFR 404.1520(g) and
416.920(g)).

AR 18-26.


## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Morris makes two arguments:

1.    There Is Not Substantial Evidence In This Record To Support The ALJ's Determination Of Plaintiff's Residual Functional Capacity And Denial Of Disability.

2.    The ALJ Improperly Evaluated Plaintiff's Credibility, Which Affected Her Judgment.

Doc. No. 9. I will address these arguments separately.

### A.    *The RFC Assessment and Step Five Denial*

#### 1.    *Applicable Standards*

### a.    RFC

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### b.    Opinion Evidence

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

*Acceptable Medical Source Opinions.* Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). Note, however, that a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii). 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

***Other Opinion Evidence.*** Opinion evidence may also come from health care providers who do not fall within the Commissioner's definition of an "acceptable medical source," such as nurse practitioners and physician assistants. Social Security Ruling 06-03p nonetheless requires the ALJ to give consideration to such opinions. That ruling includes the following statements:

The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

* * *

In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

- Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

* * *

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

* * *

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from

"acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

* * *

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Among other things, this ruling means a physician assistant's opinion is not a "medical opinion," is not entitled to controlling weight and cannot establish *the existence of* a medically-determinable impairment. However, that opinion *can* be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function. An ALJ must evaluate the opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and

- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 404.1527(c). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

### c. The Step Five Analysis

Where, as here, the sequential disability determination reaches Step Five, the Commissioner has the burden of showing there is other work that the claimant can do, given the claimant's RFC, age, education and work experience. *Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). In *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), an ALJ made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform certain other jobs identified by a VE. *Id.* at 857. Various non-treating and non-examining physicians had reviewed the claimant's records and provided opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(*en banc*); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857. The court noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id.* at 858. The court then stated:

In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id.* (emphasis in original).

### 2. The ALJ's Reasoning

As noted above, the ALJ found that despite having severe impairments, Morris retained the RFC to perform light work,[1] but with the following physical and mental limitations:

---

[1] According to the Commissioner's regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or

The claimant can occasionally lift or carry 20 pounds; and frequently lift or carry 10 pounds. He has no restriction in his ability to stand, sit, or walk. The claimant can occasionally perform all postural activities such as climb, balance, stoop, kneel, crouch, and crawl. He should not work on ladders. The claimant needs to avoid concentrated exposure to cold, heat, humidity, and hazards.

Mentally, the claimant is limited to performing unskilled work (SVP 1 or 2).[2] He needs to avoid work that requires extended concentration or attention. Socially, the claimant should avoid large groups of people or intense interaction. His social interactions can be brief, superficial, and occasional but avoid large crowds or groups.

AR 16. Based on this RFC, the ALJ found that Morris was unable to perform any past relevant work. AR 21. This required the ALJ to proceed to Step Five, at which the ALJ determined that Morris can perform certain jobs that exist in significant numbers in the national economy, such as production helper on a food line, machine packager and housekeeper cleaner. AR 22-23.

The ALJ based these findings on a record that contains no opinion from any acceptable treating or examining source as to how Morris' impairments affect his ability to function. Instead, the ALJ relied on treatment records and opinions provided by state agency medical and psychological consultants who reviewed records but did not examine Morris. AR 17-20. With regard to Morris' physical RFC, the ALJ afforded great weight to the opinion of Jim Takach, M.D., a state-agency expert who opined in November 2007

wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR §§ 404.1567(b), 416.967(b).

[2] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the *Dictionary of Occupational Titles* as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A position with an SVP of 1 requires a short demonstration only while a position with an SVP of 2 requires vocational preparation up to and including one month. *See Dictionary of Occupational Titles*, Appendix C.

that plaintiff could perform light work with the same physical, nonexertional limitations the ALJ ultimately assessed. AR 20, 634-41. In formulating the mental RFC, the ALJ assigned some weight to the opinions of state-agency consultants Russell Lark, Ph.D., and Myrna Tashner, Ed.D., who authored reports in December 2011 and February 2012, respectively, concluding that Morris could "complete simple, repetitive tasks on a sustained basis when compliant with medications and abstinent." AR 20, 95-98, 120-23. In addition to those limitations, the ALJ found that Morris needed to "avoid large groups of people or intense interaction" and his social interactions should only be "brief, superficial, and occasional." AR 16, 20.

The ALJ discounted both (a) Morris' own statements as to the severity of his symptoms and (b) opinions and reports provided by Farrah Hassebroek, a nurse practitioner who treated Morris' mental impairments. AR 20-21. The ALJ provided various reasons for discounting the validity of Morris' subjective statements, including her determination that those statements are inconsistent with the medical evidence of record. *Id.* As for Nurse Hassebroek, the ALJ stated that she offered opinions with "little explanation of the evidence relied on." AR 20. The ALJ also found (a) most of Nurse Hassebroek's opinions lack support in the evidence and (b) Morris' reported daily activities indicate that he is not as limited as Nurse Hassebroek suggests. *Id.*

### 3. *Analysis*

Morris contends that because the record lacks opinion evidence from any acceptable treating or examining sources, the ALJ should have developed the record further, such as by ordering a consultative examination. Doc. No. 9 at 10-11. Indeed, he notes that the state agency itself determined that a medical examination was needed in connection with a prior claim for benefits. AR 86, 88. Specifically, the agency claimed in April 2010 that Morris "did not take the medical examination we asked you to have at our expense" and wrote that the exam "was needed to fully evaluate your condition." *Id.*

Morris, however, testified that he does not recall ever receiving notice of a consultative examination. AR 66-67. He explained that during the time period in which the exam was allegedly scheduled, he was staying at a respite center in Texas due to problems with his medications. *Id.* Record submitted by Morris' counsel confirm this. AR 1230-97. Meanwhile, as Morris also points out, the record contains scant (if any) evidence that any notice of a consultative examination was ever sent to him. Doc. No. 9 at 12.

The Commissioner responds by arguing that alleged "no show" situation is irrelevant because it involved a prior claim. As noted above, Morris filed the applications at issue in this case in September 2011, more than a year after the state agency deemed a consultative examination to be necessary to evaluate his prior application. The Commissioner further points out that the ALJ did not cite Morris' failure to appear for that examination as a reason for denying benefits. Finally, the Commissioner states that the record was considerably more developed in April 2013, when the ALJ issued her ruling, than it was in 2010. Doc. No. 10 at 12-13. Thus, the Commissioner argues that the ALJ's failure to arrange a consultative examination was not error.

The Commissioner misses the point. Morris does not claim that the ALJ penalized him for failing to submit to a consultative examination in 2010. Morris is making a *Nevland* argument. That is, Morris contends the ALJ erred by making a Step Five determination without the benefit of opinion evidence from any treating or examining source. Morris cites the state agency's attempt to schedule a consultative examination in 2010 as support for his argument that the record is insufficient without such evidence. Instead of addressing that issue squarely, the Commissioner simply ignores it. Indeed, the Commissioner's brief does not cite *Nevland* or otherwise attempt to explain why the Eighth Circuit's holding in that case does not compel remand. Doc. No. 10 at 11-13.

As I have explained:

> *Nevland* holds that the Commissioner "ordinarily" cannot meet this [Step Five] burden without an opinion from at least one doctor who actually examined the claimant. *Id*. at 858. Of course, "ordinarily" does not mean

18

"never." Judge Bennett recently noted that *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin*, No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013). Thus, if other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining physicians may not require remand. *Id*. at *11 (citing *Nevland*, 204 F.3d at 858).

*Kruger v. Colvin*, No. C13–3036–MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014). Thus, the question is whether the lack of opinion evidence from a treating or examining source is overcome in this case by other medical evidence that clearly establishes Morris' mental and physical RFC.

While the Commissioner notes that the record "includes a wealth of evidence postdating August 2010," she does little more than cite generally to a list of exhibits. Doc. No. 10 at 12-13. She references Nurse Hassebroek's opinions – the same opinions the ALJ found to be of little value.[3] *Id.*; AR 20. She then cites the reports of the state agency consultants who neither treated nor examined Morris. Doc. No. 10 at 13. This is rather circular, as it basically suggests that the opinions of nonexamining sources are adequate because they exist.

Having carefully reviewed all of the medical evidence of record, I conclude that it is not sufficient, under *Nevland*, to excuse the lack of opinion evidence from any treating or examining source. While the record contains treatment notes and other records reflecting that Morris received care for his impairments (*see, e.g.,* AR 642-881, 897-1168), those records do not answer the critical question of how those impairments affect his ability to function in the workplace. *Compare Figgins v. Colvin*, No. C13–3022–MWB, 2014 WL 1686821, at *9-10 (N.D. Iowa Apr. 29, 2014) (remand not

---

[3] In each of Nurse Hasselbroek's opinions, she indicated (among other things) that Morris' condition is permanent and that he was either unable to work at all or could work for less than 10 hours per week. AR 1332-39.

necessary because the treatment notes of record addressed the claimant's employability and her ability to function in a work environment). Here, for example, mental health treatment notes from 2010, 2011 and 2012 reflect serious, "uncontrolled" impairments with severe symptoms and in-patient psychiatric hospitalization. AR 1042-90, 1114-15, 1136-64. I find that the ALJ erred by failing to fully develop the record and that the ALJ's physical and mental RFC findings are not supported by substantial evidence. Remand is necessary.

On remand, the ALJ should fully develop the record by obtaining physical and mental RFC opinions from treating or examining sources. Upon obtaining those opinions, the ALJ shall consider those opinions, along with the other evidence of record, to determine Morris' RFC and complete Step Four and Step Five of the sequential evaluation process.

**B.      *Assessment of Morris' Credibility***

      ***1.      Applicable Standards***

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

      (1)     the claimant's daily activities;

      (2)     the duration, intensity, and frequency of pain;

      (3)     the precipitating and aggravating factors;

      (4)     the dosage, effectiveness, and side effects of medication; and

(5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) rather such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis*, 353 F.3d at 647).

### 2.    *Analysis*

The AJL found Morris' statements as to the intensity, persistence and limiting effects of his symptoms to be "not entirely credible." AR 18. Among other things, the ALJ based this conclusion on (a) the routine nature of the care and treatment Morris sought, (b) his failure to show up for various scheduled appointments, (c) the extent of his regular daily activities and (d) the ALJ's belief that the objective medical evidence is not consistent with Morris' allegations. AR 18-21. All of these reasons are proper. However, because I have determined that remand is necessary under *Nevland* for additional development of the record, I will direct the ALJ to reevaluate Morris' credibility in light of the new opinion evidence the ALJ will procure. Regardless of whether the ALJ's credibility finding remains the same on remand, the ALJ should

provide good reasons and explain how, if at all, the new opinion evidence impacts that finding.

## VI.    CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Morris was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this opinion.   Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 16th day of June, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE